## Napier v. Gay.

**(Decided March 10, 1936.)**

JOHN E. CAMPBELL and M. K. EBLEN for appellant.

D. G. BOLEYN and C. A. NOBLE for appellee

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Reversing.

The appellee, N. S. Gay, in a petition in equity, asserted his membership in the council of the city of Hazard, and charged that the appellant, C. W. Napier, Jr., was interfering with him in the discharge of his official duties and claiming to be a member of the council by virtue of his election by other members to fill a vacancy pretended to exist by reason of the plaintiff's attempted removal under void procedure. He sought an injunction enjoining the defendant from taking possession of his office and interfering with him in the performance of his duties. The defense pleaded is disclosed by the statement of facts herein. The court granted the prayer of the petition, and the defendant appeals.

The appellee was elected a member of the council in November, 1935, and qualified and entered upon the discharge of his office. Before then, condemnation proceedings had been instituted by the state highway commission to condemn a portion of a city lot owned by him, and another one across the street owned by his daughters, for widening of a street which is part of a state highway. The award in the county court was $800 to the daughters and nothing to him. They had taken appeals to the circuit court. The amount of the award was paid into court and the property taken into possession pending the appeals.

The matter of a compromise settlement was before the council on two or three occasions, but the several propositions submitted failed of acceptance, either by the council or Mr. Gay representing his daughters (who lived with him) and himself. However, he did not vote as a member of the council on these propositions. At a meeting held January 1st, Gay himself made a motion that $2,500 be paid by the city to his daughters for the property, agreeing that he would also dismiss his appeal in the condemnation proceedings. The record

shows that Councilmen Gay and Hughes voted for its adoption; Moran voted against it; and Combs remained silent. Pursuant to the adoption of the resolution, an order was entered directing the payment of $2,500. This was to be done by withdrawing the $800 deposit and issuance of three warrants for the remainder. On January 3d an agreed order, embodying the action of the council and dismissing the cases, was entered in the circuit court. This was signed by the attorney for Mr. Gay and his daughters, and by the city of Hazard by its mayor and clerk. The $800 deposit was paid to one of the daughters. On the same day a suit was instituted to enjoin the collection of the warrants and further proceedings under the resolution of the city council, because of its invalidity. The agreed judgment not having been signed by the court was thereupon set aside. The circuit court refused a temporary injunction in the case just mentioned, but one was granted on January 21st by a member of this court.

Pursuant to a call signed by four members of the council, a special meeting was held on January 28th. The mayor and five councilmen were present. Mr. Gay had received no notice of this meeting and was not present. Setting out that Gay had appeared before the council on December 26th and January 1st as representative of himself and his daughters, and had made the motion to allow his daughters $2,500 in settlement of their claim and his own, and of his having voted therefor, a motion was made that Gay's office as councilman be declared vacant on that account. Although the record shows that Councilman Moran seconded the motion, it does not show what he did when the vote was taken. Two of the other four voted to adopt the motion and two "passed." Another motion was made that, "the office of Councilman Gay be declared vacant under provisions of section 3484, Kentucky Statutes, because he represented himself and daughters in making a contract with the city and that he be thrown out for cause as provided in section 3486, Kentucky Statutes, for making said contract; seconded by Moran, and the vote being called resulted as follows: Turner for it; Garth for; Moran for it; Combs passed; and Hughes passed. Said motion carried and so ordered by the council." Then a motion was adopt-

ed that C. W. Napier, Jr., be appointed to fill the vacancy. He accepted the office and qualified as councilman.

Concerning the vote upon the motions and of Councilman Combs on the compromise motion, it may be said that those present but not voting are regarded as having voted affirmatively. Lawrence County v. Lawrence Fiscal Court, 191 Ky. 45, 229 S. W. 139; City of Springfield v. Haydon, 216 Ky. 483, 288 S. W. 337; Johnson v. Elliott County Board of Education, 245 Ky. 834, 54 S. W. (2d) 382. The council consisted of six members, so it is manifest that a majority acted affirmatively upon the several motions.

Gay received no notice of the charges being preferred against him or of the meeting of the council on January 28th. But when a resolution was offered at the regular meeting of January 6th to declare his office vacant, he and the mayor walked out, breaking a quorum. There was no quorum at the adjourned meeting of the 14th when a similar resolution was offered. However, we may dismiss from consideration the action undertaking to expel the appellee "for cause," for reasons to be presently given, so the absence of notice or hearing becomes immaterial.

The property owned by Gay was valued by him at $500, so there was considerable personal interest on his part when he agreed to dismiss the appeal upon the payment of $2,500 to his daughters.

There is no conflict in the evidence as to the material facts. We are not concerned with the questions of motive or of good or bad faith of the participants. We are concerned only with what was done and the legal effect.

Section 3484 of the Statutes, relating to the legislative department of cities of the fourth class, provides:

> "Should any officer of said city be directly or indirectly interested as agent or principal in any contract with said city, or as surety on any such contract, he shall thereby vacate his office, and the contract, if entered into before said officer vacates his office, shall be null and void."

Section 3486 of the Statutes includes the provi-

sion that "three-fourths of the members voting affirmatively may, for any good cause, expel any member." The same section and section 3552 provide that the council may fill a vacancy in the office of councilman.

The provisions of section 3486, authorizing the council to expel a member for "good cause," is supplementary to the terms of section 3484. Section 3486 deals with matters of procedure and removal for cause—apparently relating to the administration of the office—while section 3484, in respect of the issue involved here, deals with qualification or eligibility of the members, both before and after election. It clearly and explicitly provides the very fact of an officer of a city becoming directly or indirectly interested as agent or principal in a contract with the city vacates the office. Such an officer by his own act does that. It is just as effective as if he resigns and his resignation is accepted, or he accepts an incompatible office, or otherwise voluntarily makes himself ineligible. Keating v. City of Covington, 35 S. W. 1026; Vickers v. Sory, 102 S. W. 272; McLaughlin v. Shore, 152 Ky. 746, 154 S. W. 45; City of Williamsburg v. Weesner, 164 Ky. 769, 176 S. W. 224; Herman v. Lampke, 175 Ky. 109, 194 S. W. 122; Douglas v. Pittman, 239 Ky. 548, 39 S. W. (2d) 979; Middleton v. Middleton, 239 Ky. 759, 40 S. W. (2d) 311. Other cases of this general class are distinguishable either on the statute involved or the facts, as, for example, where the question was raised by a party not claiming the right to the office.

One of the grounds upon which the trial court based his decision that there was no vacancy in the office is that the statute contemplates a completed contract and does not undertake to penalize an officer for attempting to procure a contract; that since the compromise or settlement of the condemnation suits was never consummated, that is, the money for the land was not received under it, there was no contract; hence that Gay was not guilty. Further proceedings under the condemnation suit were necessary because this compromise was void on account of the participation in its execution by the councilman both as agent and personally. His principal, Miss Gay, did receive

the $800 deposited by the county pending the trial. It took an order of court to stop further collections. To give such an interpretation to the statute would destroy it. Strictly speaking, there can never be a confirmation of a void contract although the parties may act under it. The statutory penalty prescribed is two-fold: (1) The action is made void, and (2) the officer is deprived of his office by the very fact of his participation.

Judgment reversed with directions to dismiss the petition.